ROMAN CATHOLIC CHURCH, DIOCESE OF PONCE, ET AL., Appellants, *v.* REGISTRAR OF PROPERTY OF GUAYAMA, Respondent.

No. 1175.   Submitted December 6, 1945.—Decided January 31, 1946.

*Miguel Marcos Morales* for appellant.

Mr. Justice Todd, Jr., delivered the opinion of the court.

The eminent Puerto Rican, Don Federico Degetau y González, died in this city on January 20, 1914, under an open will executed on September 4, 1913, before Notary Jorge V. Domínguez. He stated therein that he was married to Doña Ana Moreno Valarino, that he had no legitimate or natural children and after making several legacies, he provided in the seventh clause of said will the following:

"That since he has no forced heirs, either ascendants or descendants, he institutes, of his own free will, as such heirs to all his property, rights, and claims, his wife Doña Ana Moreno y Valarino and Don Bonifacio Sánchez y Giménez, as follows: his property shall be equally divided between both heirs; the usufruct of all of the real property shall belong to each, share and share alike; at the death of either heir, the survivor shall apply the usufructuary share of the decedent to the creation, maintenance, and promotion of a cultural or charitable institution in the Island of Puerto Rico, such as a Library, Museum, or an Asylum for Scrofulous and Undernourished Children; to the creation of a professorship in the Ateneo de San Juan, or to any other institution of the same character in this Island, or for any other purpose or purposes of a similar nature which the surviving heir may decide. The remaining half of the usufruct of said real property, at the death of the other heir, shall be devoted to an identical or similar purpose.

"In order to carry out the creation of the institution referred to in this seventh clause the testator assigns, in particular, his collection of paintings and books which he has kept for that purpose and the lands designated therefor in Aibonito, and he commissions and asks his friends Don Francisco Parra Capó and Don José Tous Soto, of Ponce, Don Manuel Fernández Juncos, Don Antonio Alvarez Nava, Don Emilio del Toro, and Don Luis Sánchez Morales, of San Juan, and Messrs. James L. Slaiden, Henry Allen Cooper, George Cabot Ward, George F. Moore, and William A. Wilbur, to co-operate in the acomplishment of said purpose, upon being so requested by the aforesaid heirs, to whom he has left instructions in order that in discharging this commission these gentlemen should incur in no

expense whatsoever and be afforded, so far as possible, all the facilities for rendering their most valuable co-operation.''

Doña Ana Moreno Valarino widow of Degetau died in Madrid, Spain, on September 19, 1918, under a holographic will which, pursuant to the proper judicial proceedings, was embodied in a public instrument, wherein Don Fernando Pignet y Moreno was declared her sole and universal heir.

On September 18, 1923, the partition of the property left at the death of Don Federico Degetau y González was protocolized before Notary Attorney José Ramírez Santibáñez, Don Manuel Fernández Juncos acting as attorney in fact of Don Fernando María Pignet y Moreno, and Don Bonifacio Sánchez y Giménez in his own behalf. Referring to the provisions contained in the seventh clause of the will of Don Federico Degetau y González, the deed of partition recited the following:

"NINTH. *Waiver of the naked ownership by Mr. Pignet.*—Don Manuel Fernández Juncos, in his capacity as attorney in fact of Don Fernando María Pignet y Moreno and in compliance with the latter's instructions, expressly renounces in favor of Don Bonifacio Sánchez y Giménez, the right of naked ownership which according to the construction given to the will of Don Federico Degetau should belong to the renouncer's mother, Doña Ana Moreno, and at her death, to the renouncer, as her sole heir.

"This waiver is made for the sole purpose of vesting in Don Bonifacio Sánchez y Giménez the full ownership of the property which was left to him, in usufruct only, by the deceased Don Federico Degetau; *but the intendment and object of this waiver is that the property acquired by Mr. Sánchez by virtue thereof, which formerly belonged to Mr. Pignet, should remain in his possession and be awarded to him in trust in order that he may fulfill the will and obligations imposed by the deceased, Don Federico Degetau, which will and obligations the renouncer, Mr. Pignet, delegates to him and which clearly appear in the aforesaid seventh clause of the will, and that steps be accordingly taken, leading to the creation of the institutions provided by Mr. Degetau, with the co-operation of the board composed of the friends designated by him, in order to*

*carry out the humanitarian wish of the deceased to the extent that the amount and condition of said property will permit."* (Italics ours.)

"TENTH: *Waiver of the naked ownership by Mr. Sánchez.*—Now comes Don Bonifacio Sánchez y Giménez and makes the same waiver, for the same purposes above stated, of such share in the naked title as may belong to him by virtue of the death of said Doña Ana Moreno, wife of Mr. Degetau.

" *    *    *    *    *    *    *

"FOURTEENTH: *Assets of the deceased Don Federico Degetau.*— From all the foregoing, it follows that the assets which were owned by the deceased Don Federico Degetau, now belong to Don Bonifacio Sánchez y Giménez as his voluntary heir in the following manner: one-half in usufruct, and the other half of the usufruct together with the naked title to all the property of said deceased, *constitutes a trust and it shall be so awarded to the aforesaid Mr. Sánchez Giménez, in order that he may fulfill the humanitarian wish of the testator Mr. Degetau as provided in his will."* (Italics ours.)

One-half of the Rosa Cruz Estate in Aibonito was awarded to Mr. Bonifacio Sánchez y Giménez in this manner:

"Mr. Sánchez y Giménez, to whom the property is awarded, shall enjoy the usufruct of one-half of this estate, to wit: he may freely dispose for himself of one-half of its products, rentals, and profits, but as to the remaining products and rentals and the whole naked title, he shall be considered as a trustee, and shall apply the same for the purposes provided in the will."

and it was thus recorded in the Registry of Property of Guayama.

On April 17, 1944, Don Bonifacio Sánchez y Giménez died under an open will executed five days previously before Notary Miguel Marcos Morales wherein, as regards the Rosa Cruz Estate of Aibonito, he made the following legacies:

"It is the will of the testator that the ownership of the remaining portion of the estate 'Degetau,' after TWENTY ACRES ARE SEGREGATED for the 'AMERICAN BAPTIST HOME MISSION SOCIETY,' as provided in the fourth paragraph of this will, shall devolve upon the testator's nephew, Don PEDRO SÁNCHEZ GONZÁLEZ, of legal age, married to Doña Ramona Espada Roig, a farmer, and resident of Aibonito, as

a reward for his tender care and patience which he has bestowed upon me for so many years, and *as charity in order that he may help his mother who is a paralytic, living in Spain,* from which country the testator brought his nephew in order that the latter could take care of him; and further in order that Mr. SÁNCHEZ GONZÁLEZ *may provide for his wife and son;\_.\_.\_.* (Italics ours.)

"*"     *     *     *     *     *     *

"SEVENTH: It is the will of the testator that out of the property from which TWENTY ACRES are devised to the 'AMERICAN BAPTIST HOME MISSION SOCIETY,' and of the remaining portion of said property, before paying or delivering to Don PEDRO SÁNCHEZ GONZÁLEZ the portion indicated in the fifth paragraph of this will, a parcel of THREE ACRES of land be segregated, abutting on land of Alejandro Irizarry, formerly of Dolores and Angela Fournier, and that said parcel of land, which should have an outlet to the public highway, be delivered to the ROMAN CATHOLIC CHURCH, Diocese of Ponce, at present represented by His Most Excellent and Most Honorable Bishop of Ponce, Monseigneur Willinger, *in order that the Bishop may dispose of this parcel of land as he deems advisable.*" (Italics ours.)

Upon the deeds of payment of legacies to the Roman Catholic Church, Diocese of Ponce, and to Pedro Sánchez González, being presented for record in the Registry of Property of Ponce, the registrar refused to record the same on the ground that "although it is true that the main property from which the parcel awarded is segregated, is recorded in favor of the testator Bonifacio Sánchez Giménez, yet it is only recorded in his name as usufructuary heir and beneficiary (*sic*) of his predecessor Don Federico Degetau y González, in order that he may dispose of it as provided . . . in the seventh clause of his will . . . and that an heir thus instituted may not . . . dispose of the property thus inherited, for the benefit and enjoyment of persons and institutions foreign to those appointed by the testator Don Federico Degetau González in the aforesaid will, "as in this case are Pedro Sánchez González and the Catholic Church to whom the property was awarded. The registrar further stated that a subdivision

being involved, a final or preliminary plat approved by the Puerto Rico Planning, Urbanizing, and Zoning Board must be previously recorded. '

Appellants contend that the registrar erred in construing the seventh clause of the will of Don Federico Degetau y González, inasmuch as the ultimate purpose of the testator was that the usufruct of his property should be devoted "to a cultural or charitable object, in the Island of Puerto Rico or to a charitable or cultural institution in the Island of Puerto Rico" and that there is no question that the Roman Catholic Church is a cultural and charitable institution,[1] and as to the legacy made in favor of Don Pedro Sánchez González in order that he may take care of his paralytic mother, it is argued that it also fulfills the express will of the testators contained in the seventh clause.

The appellants are mistaken. According to § 20 of the Mortgage Law,[2] the registrar did not err in refusing the record sought in these cases. Although it is true that Don Bonifacio Sánchez y Giménez had recorded the Rosa Cruz Estate in his name, said record was not made as owner in fee but as usufructuary of one-half of the property and as trustee of the other half and the whole of the naked title in order to carry out the express wish of his predecessor Don Federico Degetau y González set forth in the seventh clause of his will.

Commenting on § 20 of the Mortgage Law Morell says:

"Our theory that the interest must first appear of record, should be fully applied taking into consideration the extent of limitations

---

[1] Appellants' attorney devotes many pages of his well-written brief to outline, in synthesis, the history of the Catholic Church, its work and the establishment of cultural and charitable institutions through centuries.

[2] Said Section, in so far as pertinent, reads thus:

"In order to permit of the record or entry of deeds conveying or encumbering the ownership or possession of real property or property rights, the interest of the person executing it or of the person in whose name the conveyance or encumbrance is made must first appear of record. "Registrars shall refuse to admit to record such deeds until this requisite shall have been complied with, and they shall be directly responsible for any damage they may cause a third person by the violation of this provision."

under which it appears recorded. *Nemo dat quod non habet.* All the cases controlled by Section 20 are a faithfull reproduction of this principle. Hence, *one who appears as having recorded the naked title alone can not convey the full ownership;* one who holds an undivided interest, can not encumber a determinate portion; one who owns two hectares of land only, can not convey three, etc." (Italics ours.) 2 *Legislación Hipotecaria,* 372.

Furthermore, § 866 of the Civil Code (1930 ed.) provides that "The trustee shall not dispose of the trust property in a manner contrary to, or different from, the one established in the trust." In what form did Don Federico Degetau y González provide in his will for the division of the property with regard to Rosa Cruz Estate, which was accepted by don Bonifacio Sánchez y González? He expressly provided that: "at the death of either heir, the survivor shall apply the usufructuary share of the decedent *to the creation, mainte- nance, and promtion of a cultural or charitable institution in the Island of Puerto Rico, such as a Library, Museum, or an Asylum for Scrofulous and Undernourished Children; to the creation of a professorship in the Ateneo de San Juan, or to any other institution of the same character in this Island, or for any other purpose or purposes of a similar nature which the surviving heir may decide. The remaining half of the usufruct of said real property, at the death of the other heir, shall be dedicated to an identical or similar purpose."* (Ita- lics ours.)

In the legacy to the Roman Catholic Church, Diocese of Ponce, it is stated that the same is made *"in order that the Bishop may dispose of this parcel of land as he deems advis- able."* (Italics ours.) And in the deed of the payment of the legacy the parcel of land is conveyed "free of any lien or encumbrances, without any restriction or limitation what- soever." Notwithstanding the cultural or charitable work which undoubtedly has heretofore been, and still is, accom- plished by the Catholic Church, there is nothing in the legacy made by Don Bonifacio Sánchez y Giménez in favor of said

institution which even tends to impose upon it the obligation of complying with the stipulation set forth by Don Federico Degetau y González in the seventh clause of his will. We can not take into consideration the information contained in appellant's brief to the effect that the parcel of land of three acres bequeathed to the church is adjacent to another property of said institution wherein "the first Catholic University of Puerto Rico shall stand . . . and it is for the enlargement of this work, of a cultural and charitable nature, that Monseigneur Willinger accepts this legacy . . ." This fact does not appear from the will of Don Bonifacio Sánchez y González or from any other document presented to the registrar and we have already held that registrars shall determine the legality of the instruments sought to be recorded upon the facts that appear from the instruments themselves, and they are not permitted to base their decisions on facts which do not appear from the documents submitted to their consideration or from the registry. *Infanzón y Rodríguez* v. *Reg. of Guayama,* 4 P.R.R. 130. And in an administrative appeal, the appellant can not urge as a ground for reversal any question not submitted to the registrar upon making his decision. *Heirs of Jiménez* v. *Registrar,* 48 P.R.R. 837; *National City Bank of N. Y.* v. *Registrar,* 46 P.R.R. 79.

As to the legacy made in favor of Mr. Pedro Sánchez González "as a reward for his tender care and patience which he has bestowed upon me for so many years, and as charity in order that he may help his mother who is a paralytic, living in Spain," even though the intention of Don Bonifacio Sánchez y González was an act of personal charity in behalf of Mr. Pedro Sánchez González, we can not accept that this action of this testator, as trustee of the property of Don Federico Degetau y González, complies with the purpose set forth in the seventh clause of the will.

Appellants argue that, according to the closing phrases of said seventh clause to the effect that the usufruct of said property could be dedicated *"for any other purpose or pur-*

*poses of a similar nature which the surviving heir may decide,"* (Italics ours) and that "the other half of the usufruct of said real property, at the death of the other heir, shall be devoted to an *identical or similar purpose,"* (Italics ours) Don Bonifacio Sánchez y González was vested with discretion to make the legacies to the Catholic Church and to Mr· Sánchez in the manner he did. We do not agree with this interpretation.

The discretion granted to the trustee under the aforesaid phrases, was limited by the stipulation previously made of the specific purposes which Don Federico Degetau y González had in mind when he constituted the trust, that is, the creation, maintenance, or promotion of a cultural or charitable institution in this island, such as a library, museum, asylum for scrofulous and undernourished children or to the creation of a professorship in the Ateneo of San Juan or to any other institution of the same kind in this island.

Furthermore, there is nothing in the will of Don Bonifacio Sánchez y González or in any of the other documents presented to the registry which would tend to show that the trustee, upon making the legacies in question, sought the co-operation of any of the gentlemen mentioned in the second paragraph of the seventh clause of the will of Don Federico Degetau y González, which co-operation the latter recommended and requested "in order to carry out the *creation of the institution* referred to in the seventh clause." (Italics ours.) This second paragraph clarifies and ratifies, if any doubt could arise, that the main intention of Don Federico Degetau y González in establishing the trust was to create, with the usufruct of Rosa Cruz Estate, an institution like those already enumerated or of a similar nature.

We are of the opinion that, with regard to the legacies involved in the present appeal, the purpose for which the trust was created by Don Federico Degetau y González was not complied with and, therefore, the decisions appealed from must be affirmed.